IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATHAN H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25CV958 |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND MEMORANDUM OPINION<br>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Nathan H. ("Nathan") brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for social security disability insurance benefits and a period of disability.[1] The Court has considered the certified administrative record and dispositive briefing from the parties. Because the Administrative Law Judge's ("ALJ") decision is not susceptible to judicial review, the Court will grant Nathan's request for remand, as set forth below.

## I. PROCEDURAL HISTORY

Nathan filed an application for disability insurance benefits and a period of disability in August of 2023, alleging a disability onset date of June

13, 2023. (Tr. 199-205.) The applications were denied initially and upon reconsideration. (Tr. 88-91, 101-07.) After a hearing, the ALJ determined on December 10, 2024 that Nathan was not disabled under the Act. (Tr. 29-65.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for the purposes of judicial review. (Tr. 3-7.)

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 4. By Order of

Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). Docket Entry 10.

specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Nathan is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III.  THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Nathan had not engaged in substantial gainful activity since the alleged onset date of June 13, 2023. (Tr. 32.) The ALJ next found the following severe impairment at step two: chronic lymphocytic leukemia. (Tr. 32.) At step three, the ALJ found that Nathan did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 33.)

The ALJ next set forth Nathan's Residual Functional Capacity ("RFC") and determined that he could perform a reduced range of light work:

> except he can frequently climb ramps, ladders or scaffolds, he can frequently climb ramps or stairs, he can frequently balance, stool [*sic*], kneel, crouch and crawl; and he can avoid concentrated exposure to extreme cold, extreme heat, vibrations, irritants such as fumes, odors, dust and gases, and hazards.[2]

(Tr. 33.) At the fourth step, the ALJ determined that Nathan was unable to perform his past relevant work. (Tr. 36.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Nathan could perform. (Tr. 36-37.)

IV. DISCUSSION

In his appeal, Nathan asserts in pertinent part that "[t]he ALJ erred by failing to account for [his] need for additional unscheduled breaks due to frequent [bowel movements] in the RFC." Docket Entry 9 at 4. As explained in greater detail below, this objection has merit and warrants a remand for further administrative proceedings.

A. The RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (stating that claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines*, 453 F.3d at 562. The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence

---

[2] The RFC finding in the ALJ's decision twice states that Nathan could frequently climb "ramps" and also omits any reference to the ability to climb "ropes."

(Tr. 33.) The ALJ further appears to mean "stoop" instead of "stool." (Tr. 33.) The Commissioner may, if he so chooses, address this on remand.

(e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). Failure to do so constitutes reversible error. *See*

*Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's

4

determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ indicated that one of the side effects of Nathan's leukemia was diarrhea. The ALJ indicated further that it imposed limitations on Nathan's capacity to function. However, the ALJ then failed to set forth a logical bridge between Nathan's diarrhea and the ultimate RFC finding. This warrants remand.

More specifically, in his decision, at step two and without elaboration, the ALJ noted Nathan's chronic lymphocytic leukemia was a severe impairment. (Tr. 32.) Next, at step three, the ALJ noted that Nathan's leukemia did not meet or equal a listing (Tr. 33.)

The ALJ then assessed Nathan's RFC. In pertinent part, the ALJ summarized Nathan's testimony as follows:

> The claimant, who was 44 years old at the time of the latest hearing, alleged disability based on physical and mental impairments. He alleged suffering from non-Hodgkins lymphoma and its related symptoms. He indicated, due to

5

his impairments, he was unable to perform basic work related functions. He testified to being diagnosed with leukemia in 2022 and having to stop working in 2023. He testified to having infusion treatment for 6 months and then pills for 6 months. He testified to constant diarrhea and fatigue. He testified to doing 6 rounds of immune therapy and having side effects of diarrhea, increased nausea, and tiredness. He testified that because of his fatigue, he would sleep and lay on the couch on a daily basis. He testified to constant diarrhea and having to bring a change of clothing when he was working. He testified to still having continued diarrhea issues and often laying in bed due to lack of energy and exhaustion.

(Tr. 34.)

Nathan thus placed the side effects of his leukemia treatment at the heart of his disability claim, including allegations of uncontrolled diarrhea. However, the ALJ failed to adequately assess these allegations during the relevant period: June 13, 2023 (the alleged onset date and the date Nathan stopped working) through December 10, 2024 (the date of the ALJ's decision). (Tr. 29, 38, 229.)

Instead, the ALJ noted the following, which occurred while Nathan was still working and *before* the alleged onset date: Nathan was diagnosed with leukemia in early 2022. (Tr. 34, 776, 830.) He complained of chronic diarrhea. (Tr. 35, 396.) Gastrointestinal testing in 2022 did not show celiac disease or infection or lymphocytic colitis. (Tr. 35, 352, 396, 399.) Nathan "reported a dramatic improvement in his diarrhea from having 6-7 bowel movements a day to about 3 a day after starting a new medication regimen." (Tr. 35, 399.) A diagnosis was made of lymphocytic lymphoma, and Nathan was referred to oncology. (Tr. 35, 354, 909, 390, 406.)

The ALJ also noted the following, which occurred *after* the alleged onset date of June 13, 2023, the day Nathan stopped working at Harris Teeter where he had been employed for 23 years. (Tr. 46-48, 197, 199.) First line therapy began in September of 2023, and treatment consisted of biopsy, medication, chemotherapy, diagnostic imaging, blood panel testing, and observation. (Tr. 34-35 *citing* 516-981, 1017-1251, 1265-1458.) Nathan was feeling "slightly better" by October 2024 after coming off oral Venetoclax therapy and was showing "slight improvement in frequency of loose stool present." (Tr. 34-35, 1278.) He indicated around that time "that he continued to experience fatigue, nausea, vomiting, night sweats and watery diarrhea" (Tr. 34, 1313, 1320.) Nathan "had an

excellent response to first line therapy and was in remission [by November of 2024] despite suffering fatigue and diarrhea as side effects from his medication." (Tr. 34-35, 1278.)

The ALJ then considered the medical opinions. Specifically, the ALJ noted that he found "mostly persuasive" the opinions of the non-examining state agency medical consultants who suggested in December of 2023 and July of 2024 that Nathan could perform a reduced range of medium work with additional postural and environmental limitations. (Tr. 35, 73, 83.) The ALJ explained that the "record supported limitations that were more severe at the less than light exertional level. Particularly, the claimants continuing complaints of fatigue and diarrhea as a result of his medication side effects." (Tr. 35-36.) However, the RFC did not accommodate additional bathroom breaks or time off task. (Tr. 33.)

The ALJ thus summarizes evidence and concludes without explanation that the RFC accommodates Nathan's diarrhea, one side effect of his leukemia treatment. This is problematic. The ALJ's summary of the evidence goes straight from listing evidence to stating a conclusion and in so doing also fails to address or reconcile material evidence related to Nathan's diarrhea that could impact the outcome of this analysis. *See Shawn R. v. Bisignano*, No. 1:25CV118, 2026 WL 607376, at \*8

(M.D.N.C. Mar. 4, 2026) (remanding under similar circumstances and noting that "the ALJ summarized evidence and concluded that the RFC accommodates [claimant's] [irritable bowel syndrome]. However, . . . meaningful review is frustrated where an ALJ goes straight from listing evidence to stating a conclusion.").

Specifically, the ALJ does not acknowledge or address evidence suggesting that after he began first line treatment for leukemia, Nathan's diarrhea appears to have worsened. Both objective and subjective evidence support this conclusion. For example, Nathan visited the emergency room on August 30, 2023, where he "report[ed] having diarrhea secondary to chemo and fe[lt] like he [was] dehydrated." (Tr. 526, 516-530.) Treatment included IV fluids. (Tr. 527 ("IV fluids ordered").) In March 2024, Nathan took a "treatment holiday" because of his diarrhea. (Tr. 1053, ("Chart reviewed, patient is currently on a treatment holiday for diarrhea. If his symptoms improve during break then Venclexta may be reduced to 300 mg daily")).) In April of 2024, Nathan's potassium was low "probably due to the loose stool." (Tr. 1041.) In September of 2024, Nathan still complained to his treatment providers of 10-12 bowel movements a day. (Tr. 1321.) On November 1, 2024, his diarrhea was again noted in a treatment record next to a statement that he "lost about 15 pounds since August 2024." (Tr.

7

1269.)

The ALJ does not mention any of this. Instead, the ALJ listed some of the relevant evidence and then sets forth an RFC that does not include any time off task or bathroom breaks. Thus, the ALJ's analysis implicitly rejects any need for these accommodations with little to no discussion. This cursory analysis is inadequate.

Beyond this, the ALJ relied heavily on the fact that Nathan had a period of "dramatic improvement" with his diarrhea in October of 2022 *before* the alleged period of disability and *before* he began his first line treatment for leukemia. (Tr. 399, 35 (ALJ noting Nathan's "dramatic improvement in his diarrhea from having 6-7 bowel movements a day to about 3 a day after starting a new medication regimen").) Given the evidence that first line treatment for leukemia may have exacerbated Nathan's gastrointestinal issues, this brief period of improvement before the alleged period of disability and the start of chemotherapy is insufficient to support the RFC. The ALJ had to do more here.

To that end, Fourth Circuit precedent makes clear that meaningful review is frustrated where an ALJ goes straight from listing evidence to stating a conclusion. *See Woods*, 888 F.3d at 694. And beyond this, "[o]bviously, the need to visit the bathroom many times throughout the day impacts

one's ability to work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021) ("[T]he ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work."). Thus, while the ALJ here did not necessarily have to include accommodations for bathroom breaks in the RFC, he did need to explain (and support with substantial evidence) his implicit finding that bathroom breaks beyond normal breaks in a workday were unnecessary. *See* SSR, 1996 WL 374185, at *6 (characterizing eight-hour workday as having "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

This error is not harmless. Nathan testified that his treatment included intravenous infusions for six months and then he was on a pill version of his medication for another six months. (Tr. 49-50; *see, e.g.*, 1147-48.) He explained that his bowel issues worsened such that he now experiences at least "16 to 20 bowel movements a day. That's just my normal day." (Tr. 50.) According to Nathan, his chronic diarrhea is usually "explosive" stating "when I got to go, I got to go." (Tr. 51.) Back when he was working, he had soiled himself requiring him to go home and change. (Tr. 52.) He still has trouble with this, he testified, but he explained "because I'm home and have access to a

8

bathroom that don't happen as much as it did. But it's like at night sometimes it'll happen." (Tr. 52.) He continues to experience significant fatigue and ongoing diarrhea despite being off of immunotherapy medications. (Tr. 53.) He has to stay near a bathroom due to the urgent nature of his diarrhea. (Tr. 58.)

The vocational expert ("VE") testified that Nathan would not be competitively employable with two or more unexcused absences per month. (Tr. 62.) Additionally, she testified that he would not be employable if he required up to six unscheduled breaks for 5-10 minutes each during the day. (Tr. 63.)

However, despite its materiality, the ALJ did not analyze whether Nathan needed additional bathroom breaks when assessing the RFC. (Tr. 33-36.) Nor did he make an allowance for time off task or explain why an allowance was unnecessary (Tr. 33-36), even though he found Nathan's leukemia at step two to be a severe impairment and discussed evidence (summarized above) related to that impairment in the decision (Tr. 32-36). The ALJ's medical summary contains an insufficient logical bridge to the RFC which does not account for these issues. (Tr. 33-36.) And they are critical, as multiple courts have so found:

- "[T]he ALJ provided absolutely zero analysis regarding the effect on Claimant's RFC of the ongoing Crohn's-related symptoms—particularly the frequency of diarrhea episodes—that he did find credible. Nor did the ALJ provide any analysis as to whether or not the 'ongoing symptoms of Crohn's disease' post-bowel resection would cause her to be off-task a significant portion of the workday." *Sharee B. v. Bisignano*, No. 5:25-CV-00045, 2025 WL 4065846, at *16 (S.D.W. Va. Dec. 17, 2025);

- "[W]hile the ALJ was not necessarily required to impose RFC limitations based on Claimant's stated need for frequent breaks, the ALJ was certainly required to set forth an explanation in the written decision of the basis for her determination that no RFC limitations were necessary. . . . The ALJ's complete failure to analyze how this factor impacted her ability to work—if indeed it did so—requires reversal[.]" *Joanne P. v. Dudek*, No. 5:24-CV-00384, 2025 WL 1510664, at *18 (S.D.W. Va. Apr. 22, 2025);

- "Here, the ALJ summarizes some of the evidence without citation to the record and then states conclusively that the RFC accommodates Laura's diarrhea and abdominal pain. Fourth Circuit precedent makes

9

clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Laura J v. O'Malley*, No. 7:22-CV-00402, 2024 WL 1954157, at *5 (W.D. Va. Feb. 14, 2024) (citation omitted);

- "[T]he RFC determination is devoid of any accommodation for Sharp's need for breaks to manage his severe medical impairment. Thus, the ALJ appears to have rejected the testimony regarding the need for unscheduled breaks. The ALJ does not, however, discuss or otherwise provide *any* analysis of Sharp's need for periodic bathroom breaks during the workday." *Sharp v. Comm'r of Soc. Sec.*, No. 1:21-CV-00015-FDW, 2022 WL 949873, at *4 (W.D.N.C. Mar. 29, 2022).

Thus, a remand for further administrative proceedings is in order.

And the Commissioner's objections are not persuasive; he asserts that Nathan's objection "amount[s] to little more than an improper request to re-weigh the evidence to reach a conclusion more favorable to him." Docket Entry 11 at 6. Not so. Rather, Nathan argues that the ALJ's analysis here lacks a logical bridge between the RFC and the omission or exclusion of time off task or extra breaks to use the

bathroom. Docket Entry 9 at 5.

Next, the Commissioner contends that the ALJ adequately explained why Nathan did not require additional breaks or time off task beyond normal breaks to account for his bathroom usage. Docket Entry 11 at 9-14. In support, he points to medical evidence relied upon by the ALJ indicating that Nathan reported improvement with his bowel medication and also tested negatively for gastrointestinal abnormalities. (Tr. 353-54, 760, 952-54, 1039.) Nevertheless, much of this evidence predated (or discussed evidence that predated) the alleged onset date as well as the date Nathan started first line therapy. *See id.* And, the ALJ failed to address and reconcile this older evidence with other newer evidence (both objective and subjective) suggesting that Nathan experienced diarrhea more frequently after he started first line therapy (*i.e.*, a visit to the emergency room complaining of diarrhea, low potassium, and weight loss).

Setting this all aside, even if the ALJ accurately found that Nathan's diarrhea-related symptoms improved, the ALJ did not find that they ceased entirely. Therefore, the Court cannot assess whether substantial evidence supports the ALJ's determination. *See Sharee B.*, 2025 WL 4065846, at *16 (relying on similar reasoning).

10

The Commissioner also points to the medical opinions of the non-examining state agency physicians who concluded that Nathan could perform a reduced range of medium work. Docket Entry 11 at 10-11. However, the ALJ only found these opinions "mostly persuasive" in light of Nathan's "continuing complaints of fatigue and diarrhea as a result of his medication side effects." (Tr. 35-36.) Therefore, it was the ALJ who emphasized Nathan's "diarrhea as a result of his medication side effects." Having raised the issue, the ALJ here was required to create a logical bridge between his RFC determination and the evidence related to it. Instead, the ALJ's cursory explanation about what impact, if any, Nathan's diarrhea would have on his ability to work fell far short of his obligation to provide a narrative discussion of how the evidence supported his conclusion.[3]

As such, the analysis is incomplete and precludes meaningful review. A remand is therefore necessary.

In the end, the record does not necessarily compel accommodations for time off task, absenteeism, or extra breaks in the RFC, but the evidence triggers the ALJ's duty to explain their omission. The ALJ did not adequately do that here, and this is sufficient to warrant remand for further consideration.

Finally, because the issue discussed here is sufficient to warrant remand, there is no need to decide the further issue(s) Nathan has raised. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).[4]

---

[3] The Commissioner also points to Nathan's daily activities to support the ALJ's omission of any need for bathroom breaks or time off task, including his ability to tend to personal care, prepare simple meals, perform light household chores, and shop in stores with some difficulty. Docket Entry 11 at 11 *citing* Tr. 34, 47-60, 243-65, 284-99. However, almost all of these activities appear to have occurred at home, where Nathan explained he had ready access to a bathroom. Tr. 52. And, in any event, the ALJs recitation of this evidence was insufficient on its own to draw a logical bridge between his cursory analysis of Nathan's gastrointestinal issues and the RFC for a reduced range of light work.

[4] Nathan's final objection is that "[t]he ALJ erred by failing to adequately account for [his] persistent fatigue status post chemotherapy for chronic leukemia in the RFC." Docket Entry 9 at 9. While not decided now, Nathan's argument carries some force. There is very little direct analysis of fatigue in the ALJ's decision (Tr. 33-36) and the Fourth Circuit has explained in *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) that more analysis may be required under certain circumstances. The Commissioner may, if he so chooses, evaluate this further on remand.

11

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability be **REVERSED** and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Order. To the extent that Nathan seeks an immediate award of benefits, the request is **DENIED**.

A Judgment remanding this action will be entered contemporaneously with this Order.

_____
JoAnna G. McFadden
United States Magistrate Judge

August 4, 2026

12